**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1901-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN C. VANNESS a/k/a
JOHN C. VAN NESS,

     Defendant-Appellant.

_____

Submitted February 24, 2021 – Decided April 26, 2021

Before Judges Fuentes, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 13-01-0208.

Joseph E. Krakora, Public Defender, attorney for appellant (Candace Caruthers, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant John C. Van Ness was convicted of theft- and fraudulent-related offenses for passing bad checks at a Sears department store in Ocean Township. Following appropriate mergers, defendant was sentenced to an aggregate five-year term of imprisonment, with a discretionary parole disqualifier of thirty months pursuant to N.J.S.A. 2C:43-6(b). He now appeals from the judgment of conviction (JOC) entered on December 17, 2018. For the reasons that follow, we affirm defendant's convictions but remand for resentencing.

I.

In January 2013, defendant was charged in a twelve-count Monmouth County indictment with various offenses arising from his two-day crime spree: third-degree theft by deception, N.J.S.A. 2C:20-4 (counts one, five, and nine); third-degree forgery, N.J.S.A. 2C:21-1(a)(2) (counts three, seven, and eleven); third-degree uttering a forged instrument, N.J.S.A. 2C:21-1(a)(3) (counts four, eight, and twelve); and fourth-degree passing a bad check, N.J.S.A. 2C:21-5 (counts two, six, and ten).

Prior to defendant's first trial in 2014, the State dismissed all six forgery and forged instrument charges (counts three, four, seven, eight, eleven, and twelve). The jury found defendant guilty on the six remaining counts of theft

by deception and passing bad checks (counts one, two, five, six, nine, and ten). On November 13, 2014, defendant was sentenced to an aggregate prison term of five years.

Defendant appealed, and we reversed his convictions and remanded for a new trial. State v. Van Ness, 450 N.J. Super. 470, 499 (App. Div. 2017). This court held defendant's constitutional right to counsel was violated by the trial court's failure to determine whether defendant qualified for a public defender, and its erroneous decision that defendant was capable of self-representation at trial. Id. at 474.

Prior to defendant's present trial, the trial judge dismissed the six forgery and forged instrument counts on defendant's motion with consent of the State. Defendant's trial spanned four consecutive days in October 2018. We recount only those facts presented at the trial that are most relevant to the issues raised by defendant on appeal.

On November 11, 2012 – during the aftermath of Hurricane Sandy – defendant purchased an air cleaner, humidifier, home generator, and gift card from Sears. Defendant presented a business check for $995.08 to Sears cashier, Shequelle Harris. The check was backdated to October 11, 2012 and drawn on a Banco Popular account held by defendant and his business, V&V Machines.

The account, which had a negative balance of $7,559.23, had been closed since 2009. Defendant was aware the account was closed and stipulated only to the following facts at trial:

> John Van Ness knew prior to November of 2012 that his business checking account with Banco Popular under the title V&V Machines bearing account number xxxxxxxx1 was closed.

Defendant asked Harris to "hold the check" and refrain from depositing it. Although the store's protocol required Harris to verify the authenticity of the check through a scanning device, she did not do so and processed defendant's check as a cash transaction. Harris was inexperienced as a cashier, having been hired by Sears two-and-one-half weeks earlier. When defendant asked when she would be working again, Harris responded, "the next day."

The following day, defendant returned to Sears and purchased eight sets of bed sheets and two coffee makers, totaling $957.55, at Harris's register. Defendant again tendered a check from the same business account, backdated one month to October 12, 2012, and instructed Harris to hold the check.

Less than an hour later, defendant returned to Sears and purchased an additional four sets of bedsheets, two television mounts, and another coffee maker, totaling $930.80, at Harris's register. Once again, defendant provided a check from the same business account, backdated to October 12, 2012, and

4

instructed Harris to hold the check. Defendant promised to return to Sears in nine or ten days to pay for all items purchased on November 11 and 12, 2012.

Except for the gift card, defendant returned all items purchased from the Ocean Township Sears to other Sears stores located in Hamilton and Toms River. Defendant received cash for the returns. When he returned to the Ocean Township Sears on November 20, 2012, staff summoned the police. Defendant was arrested in the parking lot without incident.

Harris testified on behalf of defendant at his first trial. Because she was unavailable to testify at the present trial, the judge granted defendant's unopposed motion to admit her testimony, with certain redactions. Harris's statement was admitted in evidence during the State's case-in-chief.

Harris acknowledged that defendant presented his driver's license with each check. She believed the checks were legitimate because they appeared "official." Harris would not have accepted the checks if she knew the checks were "no good."

Jean Sarno, a loss prevention manager employed by Sears at the time of the incident, noticed cash shortages from Harris's register and suspected fraud. Sarno testified at the first trial but died prior to the present trial. Sarno's testimony was not admitted in evidence at defendant's present trial, although

some of her remarks were admitted through Harris's testimony.[1]  As a few notable examples, Harris testified that Sarno said defendant was "a very violent man" and a "con artist" who "used false IDs" purchasing "stuff from certain Sears" and returning it for cash.  According to Harris, Sarno "intimidate[d]" her by threatening to report Harris to the police as defendant's "accomplice" if she failed to cooperate with the internal investigation conducted by Sears.

In addition to the prior testimony of Harris, the State presented the testimony of Sears employees, an Ocean Township police officer, and Estelmari Ramos, a branch supervisor at Banco Popular.  Because Harris's statement was read to the jury, defendant did not testify.  Nor did he present the testimony of any witnesses.

According to Ramos, the V&V Machines account was opened on February 26, 2008 and closed by Banco Popular on April 30, 2009 because the account was overdrawn by $7,559.23.  Ramos said the "account was charged off," which "means it was overdrawn" and "pretty much a loss for the bank."  The bank sent written notice of the closure to the address on file.  Bank records revealed

---

[1]  Prior to trial, the judge granted defendant's unopposed motion to preclude admission of the testimony of any State witnesses who testified at the first trial but were unavailable for the present trial.

A-1901-18

defendant had last made an "ATM balance inquiry" on March 3, 2009, when the account had a negative balance of $6,544.23.

The jury found defendant guilty of all remaining six counts of the indictment. Following defendant's sentencing, he filed this appeal.

On appeal, defendant raises the following points for our consideration:

POINT I

THE ADMISSION OF HIGHLY PREJUDICIAL AND IRRELEVANT EVIDENCE OF DEFENDANT'S BANK RECORDS DENIED DEFENDANT A FAIR TRIAL BY SUGGESTING PROPENSITY TO STEAL AND AN INABILITY TO REPAY HIS DEBTS.
[(Partially raised below)]

A. The Trial Court Erred by Analyzing the Evidence under N.J.R.E. 403.

B. A Proper N.J.R.E. 404(b) Analysis Shows that the Bank Records Evidence Was Inadmissible.
[(Not raised below)]

i. The Bank Records Evidence Fails the First Cofield[2] Prong Because It Is Irrelevant and Does Not Relate to Any Genuinely Disputed Issue.

ii. The Evidence Fails the Fourth Cofield Prong Because

---

2 State v. Cofield, 127 N.J. 328, 338 (1992).

A-1901-18

It Had No Probative Value but Was Highly Prejudicial.

iii. The Absence of a [N.J.R.E.] 404([b]) Charge that Clearly Explained the Permissible Use of the Prior Bad Act Evidence Necessitates Reversal.

## POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO THE ERRONEOUS ADMISSION OF HEARSAY EVIDENCE THAT HE WAS A NOTORIOUS, VIOLENT CON[]MAN.
(Not raised below)

## POINT III

DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE THE TRIAL COURT ERRED BY IMPOSING A SENTENCE LONGER THAN WHICH WAS GIVEN AT HIS FIRST SENTENCING, FAILING TO FIND APPLICABLE MITIGATING FACTORS, FAILING TO CONDUCT AN ABILITY TO PAY HEARING, AND MISCALCULATING [DEFENDANT]'S JAIL CREDITS.
[(Partially raised below)]

A. Defendant's Sentence Was Illegally Increased.
[(Not raised below)]

B. The Court Failed to Find Applicable Mitigating Factors.

C. The Court Erred by Failing to Determine Defendant's Ability to Pay Restitution.
[(Not raised below)]

D. Defendant's [JOC] Must Be Amended to Correct a Miscalculation of His Jail Credits.
[(Not raised below)]

## II.

We turn first to defendant's arguments raised in points I and II that challenge his convictions.

## A.

In point I, defendant contends the trial judge erroneously admitted in evidence bank records and testimony that Banco Popular closed defendant's account due to its $7,559.23 deficit. Defendant argues "the critical question for the jury was whether [he] intended to pay for the items" when he ultimately returned to Sears on November 20, 2012. But defendant claims "the [bank account] evidence was irrelevant to [his] intent to repay Sears" and "encouraged the jury to believe [defendant] planned to steal from Sears in the same manner he apparently had stolen from Banco Popular." We disagree.

The day before trial, the judge considered various pretrial motions filed by the parties. Because defendant was previously convicted of passing bad

9

checks, he sought "to limit admissibility of [his] prior convictions to demonstrate knowledge that his account was closed." In that context, defendant argued "the evidence [wa]s overly prejudicial and violate[d] [N.J.R.E.] 404 as to character and conformity." Defendant acknowledged the account was closed; he offered to stipulate to that fact. Defendant did not, however, move to preclude – or otherwise argue – the reason his account was closed constituted "bad act" evidence under N.J.R.E. 404(b).

The State opposed defendant's motion and moved to admit evidence of defendant's prior criminal convictions for passing back checks under N.J.R.E. 404(b). The State contended those prior convictions "demonstrate[d] defendant's knowledge that the account was closed." Following a Cofield analysis, the judge granted the State's motion. Ultimately, the State did not introduce evidence of defendant's prior convictions at trial. Nor did the State seek to introduce defendant's bank records as bad act evidence under N.J.R.E. 404(b).

Midtrial, defendant moved to exclude defendant's bank records. Because defendant stipulated that his account was closed when he presented the checks to Sears, he argued the balance on that account was "irrelevant" and "overly prejudicial."

10

Contending the stipulation was "very, very vague," the State argued it was entitled to demonstrate "when [defendant] learned that the account was closed"; "the circumstances under which the account was closed"; that the bank closed the account and notified defendant of its closure; and "in the month leading up to the closure [defendant] was aware of th[e] [more than $6000 negative] balance and did nothing to rectify it, which led to the closure." According to the State, "in the month before the account was closed, [defendant] was performing ATM balance inquiries on his account and saw that it was in the severe negative territory of over $6000."

Following argument, the judge rendered a decision from the bench finding the evidence was relevant and demonstrated defendant's knowledge at the time he presented the checks at Sears. The judge elaborated:

> Let me start with the premise that all evidence is prejudicial to some extent. The question is the prejudicial nature being outweighed by its [probative value] or vice versa.
>
> In this case, I think it does go exactly to what [the prosecutor] was saying, whether it's the knowledge that [defendant] ha[d] at the time that he goes [to pay for the items] with the checks.
>
> Yes, the stipulation tells part of the story, that is that he knew the account was closed as of the time of this offense. The question is beyond that, which is, the longer he knows does go to, I think, the second charge,

not necessarily the bad check charge but the theft by deception charge, because it's the knowledge there of what he's doing and trying to get the goods without paying for them.

Now, he does have a defense to that, at least what's been presented, that he [ultimately] went back with the intent to pay. Okay. That's a credibility issue, among other things, because of what happened.

He was arrested before he ever had the chance, but . . . that's a totally different issue as to whether . . . and what he knew about the bank account being closed, and at what level, and at what point in time, and how far in time prior to these incidences in November of 2012.

Now, do we need to go into the fact that his account had $100,000 on one day and, you know, $50,000 on another day and . . . it's a business account. It's going to jump all over the place. That's just the nature of business.

I don't think that's really relevant, but the closing dates, the information from the bank for that, I think that's absolutely relevant.

For the first time on appeal, defendant contends evidence that the bank closed his account "in April 2009 with a negative balance of $7,559.23" suggested he was unable to repay his debts and had a "propensity to steal." As such, defendant contends the records should have been excluded as prior bad act evidence under N.J.R.E. 404(b). In the alternative, defendant contends the judge should have sua sponte issued a limiting instruction, cautioning the jury "not

12

[to] use this evidence to decide that . . . defendant has a tendency to commit crimes or that he. . . is a bad person." Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016). Defendant further contends that because he stipulated that the account was closed, it was unnecessary for the State to introduce his bank records.

Ordinarily, the admissibility of evidence during trial rests within "the sound discretion of the trial court," State v. Willis, 225 N.J. 85, 96 (2016), and this court will review a trial court's evidentiary ruling for abuse of discretion, State v. Green, 236 N.J. 71, 81 (2018). "However, that deferential approach is inappropriate when the trial court failed to properly apply Rule 404(b) to the evidence at trial." Ibid. Nonetheless, "if the party appealing did not make its objection to admission known to the trial court, the reviewing court will review for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2).

Evidence may be intrinsic to the charged crime in two ways. Pertinent to this appeal, "evidence is intrinsic if it 'directly proves' the charged offense." Id. at 180. Additionally, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Ibid. (internal quotation marks omitted). Evidence that is

"intrinsic" to the charged crime is not "other crimes" evidence, and therefore not subject to N.J.R.E. 404(b).  Ibid.; State v. Sheppard, 437 N.J. Super. 171, 193 (App. Div. 2014).  However, even "intrinsic evidence" is subject to N.J.R.E. 403, which permits exclusion of "relevant evidence . . . if its probative value is substantially outweighed by the risk of . . . undue prejudice."  Rose, 206 N.J. at 161.

We have considered defendant's belated argument that the bank records were bad act evidence under N.J.R.E. 404(b), pursuant to the plain error standard, R. 2:10-2, and conclude it lacks sufficient merit to warrant extended discussion in a written opinion, R. 2:11-3(e)(2).  We add only the following comments.

As defendant acknowledges in his merits brief, the prosecutor did "not explicitly argue[]" that the bank records "demonstrate[d] why [defendant] committed the offenses[;] . . . had previously stolen from the bank[;] was poor[;] and had a general need of money."  Rather, the prosecutor limited his comments in summation, as follows:

> [Defendant] conducted three transactions totaling nearly $3000.  During each one of those transactions, he was checked out by cashier Shequelle Harris.  During each of those transactions, he passed checks to Shequelle Harris.

Those checks were drawn on a Banco Popular account that was closed over three years before he set foot in that store. That account, at the time it was closed, had a negative balance of $7,559.[2]3. That account was . . . defendant's account and . . . defendant knew at the time he passed the checks at Sears that his account was closed.

Consistent with the model jury charge for bad checks, Model Jury Charges (Criminal), "Bad Checks" (rev. May 12, 2008), the judge instructed the jury, in pertinent part:

> In order to obtain a conviction [for bad checks], the State must prove each of the following elements beyond a reasonable doubt: [(1)] that the defendant knowingly issued or passed a check for the payment of money, and (2) that the defendant knew at the time he issued or passed the check that it would not be honored by the drawee.

Here, the bank records directly proved defendant passed each check, knowing they would not be honored by Banco Popular and, as such, that evidence was not subject to N.J.R.E. 404(b). Rose, 206 N.J. at 180. The State introduced the records for that purpose only. As the trial judge correctly concluded, the probative value of the records substantially outweighed their prejudice under N.J.R.E. 403. We therefore discern no error, let alone plain error, in the judge's failure to analyze admission of those records under N.J.R.E. 404(b).

15

Moreover, we are not persuaded by defendant's repackaged contention that the bank records were cumulative evidence in view of the stipulation that the account was closed. We have made it clear that "in a criminal case, if facts are stipulated, the judge should not tell the jurors that they are 'bound' by such stipulated facts, if to do so would result in a directed verdict of any element of an offense charged." State v. Wesner, 372 N.J. Super. 489, 491 (App. Div. 2004).

Here, pursuant to the model jury charge for stipulations, the judge instructed the jury: "As with all evidence, an undisputed fact can be accepted or rejected by the jury in reaching a verdict." See Model Jury Charges (Criminal), "Stipulations" (approved Feb. 14, 2005). Accordingly, the jury was not bound by the stipulation and the bank records therefore were not cumulative evidence.

## B.

Little need be said regarding the assertions raised in defendant's point II. Defendant now claims the trial judge erroneously admitted Sarno's statements through Harris that defendant was "a very violent man" and "a con artist" who "had done this before." Defendant argues those statements were inadmissible as

hearsay statements under N.J.R.E. 801 and improperly introduced evidence of his prior convictions. See N.J.R.E. 404(b).

Initially, we recognize defendant elicited the challenged remarks on redirect examination of Harris at his first trial when he was uncounseled. But defendant – through counsel – moved to admit Harris's trial testimony with redactions at his present trial. During the pretrial hearing the judge and the parties engaged in lengthy colloquy regarding the admission of Harris's testimony, and defense counsel raised several objections to the State's proposed redactions. However, defense counsel neither objected to the inclusion of the belatedly challenged testimony nor objected to its omission when Harris's testimony was read to the jury. We therefore reject defendant's argument that counsel "simply . . . overlooked" Sarno's remarks.

When viewed through the prism of the plain error standard, we discern Sarno's brief comments, introduced at the end of Harris's testimony that spanned twenty-one transcript pages, was not "clearly capable of producing an unjust result." R. 2:10-2. Because defendant never objected to that admission to Sarno's remarks, we assume defendant agreed they were not harmful. See State v. Nelson, 173 N.J. 417, 471 (2002) (recognizing it is "fair to infer from the

failure to object below that in the context of the trial the error was actually of no moment") (quoting State v. Macon, 57 N.J. 325, 333 (1971)).

III.

Lastly, we address defendant's sentencing arguments. Defendant contends the trial court erred by improperly: (1) imposing a greater sentence than was ordered following his first trial; (2) evaluating mitigating factors; and (3) ordering restitution without an ability-to-pay hearing. Defendant also contends his jail credits were miscalculated, thereby requiring entry of an amended JOC.

Our analysis of these arguments is framed by well-settled principles. Generally, we review a sentencing court's decision "in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014); see also State v. Trindad, 241 N.J. 425, 453 (2020). We do not "substitute [our] judgment" for that of the sentencing court. State v. Case, 220 N.J. 49, 65 (2014). That deference, however, "applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion." Ibid. Ordinarily, we will not disturb a sentence that is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16 (1989).

A-1901-18

At his first trial, defendant was sentenced by another judge to an aggregate prison term of five years. Van Ness, 450 N.J. Super. at 491. After his second trial, the trial judge sentenced defendant to the same aggregate prison term but imposed a thirty-month parole disqualifier. Pursuant to N.J.S.A. 2C:43-6(b), the judge found three aggravating factors "substantially outweighed" one mitigating factor. In reaching his decision, the judge cited defendant's "pattern of theft by passing bad checks," including a prior conviction in this State for theft, and a Florida conviction for a "theft by deception type of charge." Relevant here, the Florida theft offense occurred after defendant committed the present offenses. The judge also referenced defendant's subsequent conviction in Pennsylvania "which may or may not" have been for a municipal theft-related offense.

On appeal, defendant argues his sentence was "illegally increased" because he had "beg[un] serving a legal sentence" for his convictions from the first trial. Defendant's argument is misplaced.

We have recognized a court may not impose a "substantially harsher sentence" on remand if the increased sentence is not required by law or is not supported by "any evidence of intervening conduct or prior oversight to justify the new sentence." State v. Heisler, 192 N.J. Super. 586, 592-93 (App. Div.

A-1901-18

1984); see also State v. Pindale, 279 N.J. Super. 123, 128-30 (App. Div. 1995) (holding in resentencing a defendant following remand, trial courts must overcome a "presumption of vindictiveness" when imposing a greater sentence than ordered before by pointing to "specific reasons justifying the increase"). To hold otherwise would effectively penalize a defendant for exercising his constitutional right to challenge his sentence. Heisler, 192 N.J. Super. at 593.

Consequently, "whenever a judge imposes a more severe sentence . . . after a new trial," the judge must provide reasons for doing so, which "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Pindale, 279 N.J. Super. at 129 (quoting North Carolina v. Pearce, 395 U.S. 711, 726 (1969)). Therefore, "if the original sentence is increased, the sentencing authority must affirmatively identify the relevant conduct or events that occurred after the original sentencing proceeding in order to overcome any presumption of vindictiveness." State v. Rodriguez, 97 N.J. 263, 276 (1984). Where, as here, the judge who sentenced defendant after the second trial is not the same judge who sentenced him following the first trial, any presumption of vindictiveness is virtually eliminated. See Texas v. McCullough, 475 U.S. 134, 139 (1986) ("[Unlike] the judge who has been reversed, the trial judge here had

20                                                                          A-1901-18

no motivation to engage in self-vindication.") (internal quotation marks omitted).

In the present matter, the trial judge expressly articulated the intervening conduct that justified imposition of a longer sentence than that determined by the initial judge. After defendant was convicted at his first trial, defendant was convicted in two other States for theft-related offenses, at least one of which was indictable. On resentencing, the court must consider defendant's "post-offense conduct, rehabilitative or otherwise," in its sentencing decision. State v. Jaffe, 220 N.J. 114, 124 (2014). The judge's decision here was supported by defendant's post-offense conduct.

We turn to defendant's argument that the trial judge failed to find applicable mitigating factors, i.e., factor two: "The defendant did not contemplate that [his] conduct would cause or threaten serious harm," N.J.S.A. 2C:44-1(b)(2); and factor four: "There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense," N.J.S.A. 2C:44-1(b)(4). Defendant contends that because the court found mitigating factor one: "The defendant's conduct neither caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(4), the "same logic" applies to mitigating factor two. Defendant also contends he stole from Sears because he was

21

"desperate and looking for charity and compassion" in the aftermath of Hurricane Sandy and, as such, the judge should have found mitigating factor four.

In sentencing, the trial court "first must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." Case, 220 N.J. at 64. The court must then "determine which factors are supported by a preponderance of [the] evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." O'Donnell, 117 N.J. at 215. We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record." Ibid. "Although there is more discretion involved in identifying mitigating factors than in addressing aggravating factors, those mitigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record." State v. Blackmon, 202 N.J. 283, 297 (2010); see also Case, 220 N.J. at 64.

At sentencing, the trial court found aggravating factors three (the risk defendant will commit another offense), six (defendant's prior record), and nine

A-1901-18

(the need to deter), N.J.S.A. 2C:44-1(a) (3), (6), and (9). The judge then addressed the mitigating factors:

> Originally when I looked at this, I did not find that there were mitigating factors; however, [defense counsel] has convinced me today that at least mitigating factor one applies. [D]efendant's conduct neither caused nor threatened serious harm. The total amount of the theft in this instance was . . . around $3000.
>
> . . . .
>
> It was not serious harm to a major corporation like Sears. On the other hand, pretty soon, in the words of Everett Dirksen, a dollar here, dollar there, pretty soon you're talking serious money. And if every Sears store had these types of thefts going on, they'd be in serious trouble.

The trial judge did not, however, address defendant's argument as to mitigating factors two and four.[3] Accordingly, we vacate defendant's sentence and remand for consideration of mitigating factors two and four, and express findings supporting or rejecting both factors. We suggest no opinion as to the judge's ultimate findings or resultant sentence.

---

[3] At sentencing, defendant urged mitigating factors five (whether the victim's conduct induced or facilitated the crime), N.J.S.A. 2C:44-1(b)(5), and eight (defendant's conduct was the result of circumstances unlikely to recur), N.J.S.A. 2C:44-1(b)(8). On appeal, defendant does not assert the judge failed to find those factors. An issue not briefed is deemed waived. See Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021).

We also part company with the trial judge's restitution award in the absence of an ability-to-pay assessment. In doing so, we recognize defendant neither requested an ability-to-pay hearing before the trial judge nor otherwise contested the imposition of restitution. Indeed, defendant merely asserted that the $2,749.78 total restitution amount should be apportioned per count. Notably, the judge gave defendant credit for restitution he had paid in connection with his initial convictions.

Nonetheless, before a court imposes restitution, it must find "[t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b), State v. Ferguson, 273 N.J. Super. 486, 499 (App. Div. 1994). A hearing is generally required unless there is no dispute as to the amount necessary to make the victim whole or – as is the case here – the defendant's ability to pay. State v. McLaughlin, 310 N.J. Super. 242, 263-65 (App. Div. 1998).

As the State correctly notes, the initial sentencing judge expressly found defendant had the ability to pay restitution after "he is released from prison. He is fifty-three years old. He appears to be a young man, certainly under today's actuary standards. There doesn't appear to be any reason why he couldn't go out and get legitimate employment and pay this money back." At the time of

resentencing, however, defendant was fifty-seven years old and incarcerated. And the trial judge made no findings about his ability to pay on the day of resentencing. Accord Jaffe, 220 N.J. at 124.

We agree this lapse requires the award be vacated and the matter remanded for a determination of whether defendant can satisfy the order. See State v. Pessolano, 343 N.J. Super. 464, 479 (App. Div. 2001) (remanding for reconsideration of the restitution award where the trial judge "held no hearing and made no comments during sentencing about defendant's financial status or ability to pay").

The last matter for consideration concerns the calculation of jail credits. Defendant claims the JOC must be amended to reflect nineteen days for time served between June 7, 2013 and June 25, 2013, as reflected on his original JOC and awarded by the first sentencing judge. The State counters that defendant's presentence report indicates he was incarcerated during that timeframe as a fugitive from Pennsylvania for fraud offenses committed in that State.

Although the trial judge detailed defendant's jail credits at the conclusion of sentencing, the record fails to reveal the timeframe in question. Accordingly, on remand, the judge shall determine whether defendant is entitled to jail credits

for the period spanning June 7, 2013 through June 25, 2013, and file an amended JOC as necessary.

Affirmed, and remanded for resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1901-18